UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MOHAMED M. SAEED MOUSA,

                Plaintiff,                        Case No.  1:16-CV-352

v.

                                          HON. PAUL L. MALONEY

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant,

_____/

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) to review a final

decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance

Benefits (DIB) under Title II of the Social Security Act.   Section 405(g) limits the Court to a review

of the administrative record, and provides that if the Commissioner's decision is supported by

substantial evidence, it shall be conclusive.

### STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining

whether the Commissioner applied the proper legal standards in making her decision and whether

there exists in the record substantial evidence supporting that decision.   *See Brainard v. Sec'y of*

*Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).   The Court may not conduct a *de novo*

review of the case, resolve evidentiary conflicts, or decide questions of credibility.   *See Garner v.*

*Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).   It is the Commissioner who is charged with finding the

facts relevant to an application for disability benefits, and her findings are conclusive provided they

are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight.  *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was fifty-four years of age as of his date last insured.  (PageID.39, 96.)  He was born in Yemen and reported he is able to speak and understand English, but not read and understand English.  (PageID.67, 215.)  He previously worked as a machine operator.  (PageID.71.) Plaintiff applied for benefits on December 4, 2013, alleging that he had been disabled since January 10, 2005, due to back and neck problems.  (PageID.96, 178–184.)  Plaintiff's application was denied on February 25, 2014, after which time he requested a hearing before an Administrative Law Judge

2

(ALJ).[1]  (PageID.108–114.)  On May 12, 2015, Plaintiff appeared with his counsel before ALJ Paul W. Jones for an administrative hearing at which time both Plaintiff (through an interpreter) and a vocational expert (VE) testified.  (PageID.56–81.)  At the hearing, Plaintiff also amended his alleged onset date to July 16, 2005.  (PageID.210.)  In a written decision dated May 22, 2015, the ALJ determined that Plaintiff was not disabled.  (PageID.39–55.)  On February 10, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter.  (PageID.33–37.)  Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

Plaintiff's insured status expired on March 31, 2010. (PageID.96.)  Accordingly, to be eligible for DIB under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status.  *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. § 404.1520(a-f).[2]  If the Commissioner can make a dispositive finding at

---

[1] Plaintiff also applied for Title XVI benefits.  That application resulted in a favorable determination dated February 25, 2014.  (PageID.83.)  Accordingly, Plaintiff contests only the Commissioner's Title II decision.

[2] 1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2.   An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3.   If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4.   If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5.   If an individual's impairment is so severe as to preclude the performance of past work, other factors

any point in the review, no further finding is required.  *See* 20 C.F.R. § 404.1520(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*

ALJ Jones determined Plaintiff's claim failed at step four.  At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period between his amended alleged disability onset date of July 16, 2005, and his date last insured of March 31, 2010. (PageID.44.)  At step two, the ALJ found that Plaintiff suffered from the severe impairment of a right thumb amputation.  (PageID.44.)  The ALJ also determined that Plaintiff had non-severe impairments of typhoid, irritable bowel syndrome, gastritis, and neck and back pain.  (PageID.45.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (PageID.46.)  At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments through his date last insured to perform:

> a full range of work at all exertional levels, but was non-exertionally
> limited to:  occasional handling and fingering of objects with the

---

including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

dominant right hand; in occupations that do not require written communication in English.

(PageID.46.)  Continuing with the fourth step, the ALJ determined that Plaintiff was capable of performing his past relevant work.  This past relevant work did not require the performance of work-related activities precluded by Plaintiff's RFC.  (PageID.48–49.)

Although unnecessary, the ALJ included an alternative step five determination based on the testimony of the VE.  The VE testified that Plaintiff could perform other work as a dealer accounts investigator (45,000 positions), counter clerk (31,000 positions), and school bus monitor (5,000 positions).  (PageID.75–78.)  Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy.  (PageID.50.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from July 16, 2005, the amended alleged onset date, through March 31, 2010, Plaintiff's date last insured.  (PageID.50.)

## DISCUSSION

As noted above, in order to succeed in this DIB claim, Plaintiff must establish that he became disabled prior to the expiration of his insured status.  *See* 42 U.S.C. § 423.  "[I]nsured status is a requirement for an award of disability insurance benefits." *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984).  Since Plaintiff's insured status for purposes of receiving DIB expired on March 31, 2010, he cannot be found disabled unless he can establish that a disability existed on or before that date.  *Id.*  "Evidence relating to a later time period is only minimally probative." *Jones v. Comm'r of Soc. Sec.*, No. 96–2173, 1997 WL 413641 at *1 (6th Cir. July 17, 1997) (citing *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)).  Evidence of a claimant's

medical condition after the last insured date is only considered to the extent it illuminates that condition before the expiration of the claimant's insured status.  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

At the administrative hearing, Plaintiff testified that he was born in Yemen, but since 1973, he spent seventy to eighty percent of the time in the United States. (PageID.67.)  His last employment ended in 2004 when the factory he was working at shut down.  (PageID.68.)  After experiencing back pain, Plaintiff testified he returned to Yemen for treatment.  (PageID.69–70.)  He did not receive treatment in the United States between his alleged onset date and his date last insured.  Though he asserted he was incapable of working even in 2010, Plaintiff admitted his condition has continued to degenerate.  (PageID.70.)

As his counsel stated at the hearing, however, all the records relating to Plaintiff's treatment while in Yemen were lost when the hospital he treated at was bombed.  (PageID.64.)  Consequently, as the ALJ observed, there were few records relating to the relevant time period, and most of the records are dated between 2013 and 2015, well after his date last insured.  Noting this fact, the ALJ found only three records addressed the relevant time period.[3]  The first, completed by Dr. Abdul Hameed AL-Riashy was written when Plaintiff was fifty-eight years old.[4]  The doctor stated Plaintiff was first seen on June 30, 2006, for complaints of lower back pain that radiated to both legs and which caused Plaintiff to be unable to walk or even stand.  Plaintiff also had neck pain upon flexion. (PageID.283.)  An X-Ray found degenerative changes.  Plaintiff was treated with

---

[3]The ALJ's decision properly addressed the entire record, however, including those records dated after Plaintiff's date last insured.

[4]These records are undated, but the reference to Plaintiff's age indicates they were written well after Plaintiff's date last insured.

medication and prescribed three weeks of therapy.  Though the doctor stated Plaintiff was seen "many times," the next record discussed is one from August 21, 2013.  This record demonstrates Plaintiff sought treatment, complaining of back pain radiating to his legs.  (PageID.283.)  An MRI completed that same date revealed straightening of the lumbar column and moderate degenerative changes at L3-L4 and L4-L5.  Plaintiff was again treated with medication and prescribed physical therapy.  (PageID.283.)

The second report was completed by Dr. Raed Al-Sofy when Plaintiff was fifty-nine years old.  It is clear that English is not the doctor's first language, and portions of the statement are difficult to comprehend.  Nevertheless it appears Plaintiff was seen by the doctor between March 1, 2005 and June 2, 2006.  Plaintiff was "suffering from high fever, sweating, muolgia [sic], [and] disarray helicobacter."  (PageID.284.)  A reference to orthopedic surgery is mentioned, but it is unclear in what context it was raised.  Plaintiff does not claim he was ever advised to undergo surgery, and the most the Court can surmise from the record is that it was discussed sometime between August 2013 and March 1, 2015, well after the date last insured  (PageID.284.)  In any event, Plaintiff apparently received little benefit from treatment.  (PageID.284.)

The last record was also completed by Dr. Al-Sofy when Plaintiff was fifty-nine years old.  (PageID.285.)  It references a March 1, 2005, treatment where Plaintiff was "suffering frome [sic] weakness and muolgia [sic] in upper limbs and lower limbs, gastritis, uncontrolled urin, [sic] by analysis: show he was have [sic] H,pylory [sic] positive, urin [sic] infection, typhoid fever, anexity, [sic], [and] IBS." (PageID.285.) Plaintiff was treated with medication.  Dr. Al-Sofy further indicated Plaintiff was treated through June 20, 2006, and that there was improvement "in Abdomenal [sic]."  (PageID.285.)

Most of the arguments raised by Plaintiff depend on the above records.  For the reasons stated below, the Court finds the ALJ's decision is supported by substantial evidence and accordingly remand is not warranted.

### 1. The ALJ's Failure to Classify Certain Conditions as Severe Impairments Was At Most Harmless Error.

Plaintiff first contends that the ALJ erred by failing to find that his degenerative disc disease, weakness, and myalgia in his upper and lower limbs were not severe impairments. (PageID.406.)  At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

An impairment "can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) (quoting *Higgs,* 880 F.2d at 862); *see also Williamson v. Sec'y of Health & Human Servs.*, 796 F.2d 146, 151 (6th Cir. 1986) (an impairment is less than severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience").

Step two of the sequential disability process is considered a "de minimis hurdle" designed to subject to dismissal only those claims which are "totally groundless" from a medical standpoint. *Rogers*, 486 F.3d at 243 n.2; *Higgs*, 880 F.2d at 860. "[T]his lenient interpretation of the severity requirement in part represents the courts' response to the Secretary's questionable practice

in the early 1980s of using the step two regulation to deny meritorious claims without proper vocational analysis." *Long v. Apfel*, 1 F. App'x 326, 331 (6th Cir. Jan. 9, 2001) (quoting *Higgs*, 880 F.2d at 862).

Despite this low bar, the record does not support a determination that prior to his date last insured, Plaintiff suffered from additional severe impairments. The records relied on by Plaintiff do not demonstrate impairments that significantly interfere with Plaintiff's ability to perform basic work activities. At most they list Plaintiff's subjective complaints and then provide a litany of diagnosis. "[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *McKenzie v. Comm'r of Soc. Sec.*, No. 99–3400, 2000 WL 687680 at \*5 (6th Cir. May 19, 2000) (citing *Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir.1988)); *see, e.g.*, *Higgs*, 880 F.2d at 863 ("[t]he mere diagnosis of arthritis, of course, says nothing about the severity of the condition").

But even if the ALJ erred, the Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (citing *Maziarz*, 837 F.2d at 244); *Fisk v. Astrue*, 253 F. App'x 580, 583–84 (6th Cir. 2007) (same).

Here, the ALJ determined that Plaintiff suffered from a severe impairment at step two of the sequential analysis and continued with the remaining steps thereof, considering in detail the evidence of record. Thus, even if the Court assumes that the ALJ erred in failing to find

9

that Plaintiff suffered from additional severe impairments such does not call into question the substantiality of the evidence supporting the ALJ's decision. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535–36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

Plaintiff properly asserts that the ALJ was required to consider both his severe and non-severe impairments when crafting the RFC. (PageID.406–407.) The ALJ explicitly recognized this obligation. (PageID.43.) The ALJ's discussion of the medical evidence in step two adequately explains his reasons for finding Plaintiff was not as limited as alleged. At step three, the ALJ expressly identified Listing 1.00, the listing for musculoskeletal impairments. (PageID.46.) At step four, the ALJ considered records relating to Plaintiff's non-severe impairments, including those dated after his date last insured. Despite Plaintiff's testimony that his impairments have only gotten worse, the ALJ noted records demonstrating normal musculoskeletal and physical examinations, with normal extremity movements. (PageID.47.) In this, the ALJ gave adequate consideration to Plaintiff's non-severe impairments. Accordingly, the Court finds no reversible error here.

**2.      The ALJ's Step Four Determination is Supported by Substantial Evidence.**

Plaintiff asserts that he is illiterate and unable to communicate in English. He notes that he required an interpreter at the hearing and testified that he learned work procedures from arabic speaking coworkers. (PageID.409.) As such, he claims the ALJ's step four and five determinations are unsupported by substantial evidence. Plaintiff begins by referencing regulations

relating to the Commissioner's determination at step five.  Plaintiff's claim failed at step four.  It is well settled that if the Commissioner determines that a claimant "can still do [his] past work . . . [w]e will not consider [the claimant's] vocational factors of age, education, and work experience."  20 C.F.R. § 1560(b)(3).  Thus, if the ALJ's step four determination is supported by substantial evidence, any error in the ALJ's alternative step five determination is harmless.  Proceeding, then, to Plaintiff's step four argument, Plaintiff contends the ALJ failed to consider his illiteracy and ability to communicate when determining he was capable of performing his past relevant work and, as such, the decision suffers from the same fatal flaw that was present in *Pinto v. Massanaro,* 249 F.3d 840, 846–847 (9th Cir. 2001).  The Court disagrees.

It is the claimant's burden at the fourth step of the sequential evaluation to show an inability to return to any past relevant work. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980).  To support a finding that a claimant can perform his past relevant work, the Commissioner's decision must explain why the claimant can perform the demands and duties of the past job as actually performed or as ordinarily required by employers throughout the national economy. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987).

A VE's testimony is not required when the ALJ determines that a claimant is not disabled at step four of the sequential evaluation. *See Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir. 2001) (vocational expert testimony is not required until step five of the sequential analysis); *Parker v. Sec'y of Health & Human Servs.*, 935 F.2d 270, 1991 WL 100547 at *3 (6th Cir. 1991); *Rivera v. Barnhart*, 239 F. Supp.2d 413, 421 (D. Del. 2002).  However, the ALJ may use a vocational expert's services in determining whether a claimant can perform his past relevant work. 20 C.F.R. § 404.1560(b)(2) (a VE "may offer relevant evidence within his or her expertise or

knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy"); *see, e.g.*, *Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) (observing that the ALJ may use a VE's "expert advice" to assist him in deciding whether the claimant can perform his past relevant work at step four of the evaluation).

When the ALJ obtains vocational evidence through the testimony of a VE, the hypothetical questions posed to the VE must accurately portray the claimant's physical and mental limitations. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Sec'y of Health and Human Services*, 927 F.2d 228, 231 (6th Cir.1990).

The language Plaintiff depends on can easily be distinguished. In *Pinto*, the claimant's RFC allowed for only occasional stooping, climbing, and balancing. *Pinto*, 249 F.3d at 843. It was "uncontroverted" that the claimant's past work as actually performed required constant stooping and bending. *Id.* at 844. Thus the court determined that as actually performed, this work required abilities in excess of those accounted for in the RFC and accordingly the claimant could not perform her past work as actually performed. *Id.* at 845. The question then became whether Plaintiff was able to perform her work as generally performed. The Ninth Circuit found that claimant could not. The court found the ALJ did not explain how the claimant could return to her past work as it was generally performed given her illiteracy and the description of the position in the Dictionary of Occupational Titles (DOT), which required a greater ability to communicate. *Id.* at 846–847. Here, Plaintiff does not assert the DOT description of the machine operator position requires greater

12

communicative abilities than the ALJ found.  But even assuming there was an inconsistency, such is irrelevant, as the ALJ found Plaintiff was able to perform the duties of his past work as it was actually performed.

Moreover, substantial evidence supports the ALJ's determination that Plaintiff was able to communicate in English. Plaintiff reported he could speak and understand English, but not read and understand English.  (PageID.215.)  The ALJ's RFC is consistent with this report as it limited Plaintiff from occupations requiring written communication in English. (PageID.46.) Given this limitation, the VE testified Plaintiff would be able to return to his past relevant work. (PageID.74.)  Plaintiff claims his need for an interpreter demonstrates he could not adequately speak and understand English.  Perhaps, but it is also possible that given the gravity of the situation the ALJ, out of an abundance of caution, ordered an interpreter.  In any event, to the extent Plaintiff points to conflicting records, it was the ALJ's role to resolve this inconsistency.  *See Blair v. Comm'r of Soc. Sec.*, No. 98–3581, 1999 WL 196497, *2 (6th Cir. March 26, 1999).  Accordingly, this claim of error is denied.

### 3.    Substantial Evidence Supports the ALJ's Step Three Determination.

The gist of Plaintiff's next claim is that the ALJ failed to properly address Listing 1.04A.  (PageID.410–412.) A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987).  In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the

specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987); *see, e.g.*, *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 404.1520(d).

Listing 1.04A provides as follows:

> 1.04   Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A.   Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.   Plaintiff bears the burden of demonstrating that he meets a listed impairment. *Kirby v. Comm'r of Soc. Sec. Admin.*, 37 F. App'x 182, 183 (6th Cir. 2002).

Plaintiff has failed to meet his burden.  In support of his claim, Plaintiff first appears to argue the statements from his physicians in Yemen demonstrate his impairments are medically

equivalent to this listing.  (PageID.410–411.)  While a more detailed analysis of these statements is provided below, here it is sufficient to note that none of these statements claim that Plaintiff's impairments are equivalent to any listing, or otherwise describe how Plaintiff's impairments are equivalent in any respects to any of the listing's requirements. Thus Plaintiff has failed to satisfy his burden of demonstrating equivalency. *See  Thacker*, 93 F. App'x at 728.

Plaintiff also argues she meets the requirements of Listing 1.04A. (PageID.412.) He claims his inability to ambulate effectively demonstrates evidence of nerve root compression, that he had a positive straight-leg raising test, and that his radiating pain is proof of sciatic nerve damage. (PageID.452.) There are a number of problems with this assertion.  First of all, several of the records–including the MRI and straight leg raise test–were in August 2013, well after his date last insured of March 31, 2010.  There is no indication they reflect Plaitniff's condition during the relevant period.  Moreover, Plaintiff's lay interpretation of this medical evidence, i.e., that the MRI studies demonstrated nerve root compression as required under Listing 1.04, is not sufficient to establish the requirements of the listing. *See, e.g.*, *Garcia v. Colvin*, No. 14 C 4865, 2015 WL 4658283, at *6 (N.D. Ill. Aug. 5, 2015) (noting the claimant's "lay interpretation of a diagnostic image, coupled with her own testimony, [was] insufficient to establish the existence of a cardiovascular impairment" under Listing 4.00).

Here, the ALJ observed that despite the severity of Plaintiff's complaints, his treatment appeared to be routine and conservative in nature.  (PageID.45.) Later in the decision the ALJ noted records dated in November and December of 2014 that found normal musculoskeletal examinations with normal movements of all extremities and no swelling, tenderness or muscle spasms.  (PageID.47.)  All this is inconsistent with the requirements of Listing 1.04A.  In sum, the

15

ALJ's decision that Plaintiff did not meet or equal a listed impairment, including Listing 1.04A, is supported by substantial evidence.

### 4. The ALJ's Analysis of Plaintiff's Physicians from Yemen Did Not Violate the Treating Physician Rule.

In his decision, the ALJ provided a lengthy discussion of the medical records from Yemen.  He closed by noting that "although I considered the treatment statements from Yemen, I note these statements are not acceptable medical source statements as the physicians who allegedly prepared them are not licensed in United States and are not acceptable for the purposes of Social Security rules and regulations."  (PageID.45.)  Plaintiff's final argument is that the ALJ violated the treating physician rule in discounting the statements from his physicians in Yemen.  He claims the ALJ erred in finding them to be unacceptable medical sources for the sole reason they were not licensed in the United States.  (PageID.413.)  He further claims that even if they were not entitled to controlling weight, the ALJ failed to undertake a proper analysis by using the factors set forth in 20 C.F.R. 404.1527.  (PageID.413–414.)  The Court disagrees.

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based

16

upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

Furthermore, if a treating physician's opinion is given less than controlling weight, the ALJ must still determine the weight to be afforded such. *Gayheart*, 710 F.3d at 375–76. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is

17

not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g.*, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

As an initial matter, Plaintiff asserts the above statement from the ALJ is "proof of a basic misunderstanding of medical opinion evidence and may be an indication of a prejudice against Arabic speaking people in general." (PageID.414.) Plaintiff's conclusory statement does not approach the proof of actual bias necessary to overcome the presumption that the ALJ was impartial. The ALJ is presumed to have exercised his powers with honesty and integrity, and Plaintiff has the burden of overcoming the presumption of impartiality "with convincing evidence that a risk of actual bias or prejudgment is present." *Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 364 (6th Cir. 2004) (citing *Schweiker v. McClure*, 456 U.S. 188, 196 (1982) and *Navistar Int'l Transp. Corp v. EPA*, 941 F.2d 1339, 1360 (6th Cir. 1991)); *see also Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 856 (6th Cir.2011) ("We presume that judicial and quasijudicial officers, including ALJs, carry out their duties fairly and impartially."). Plaintiff has the burden of providing "convincing evidence that a risk of actual bias or prejudgment is present." *See Bailey*, 413 F. App'x at 856; *Collier*, 108 F. App'x at 364. For the alleged bias to be disqualifying, it must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see also Miller v. Barnhart*, 211 F. App'x 303, 305 n. 1 (5th Cir. 2006). "[A]ny alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." *Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 436–37 (6th Cir. 2010). The court finds no evidence that the ALJ was biased against Plaintiff, much less the convincing evidence of actual bias

18

that is necessary to overcome the presumption of impartiality.

Turning to the merits of the argument, the Commissioner argues there are several facts standing in the way of the application of the treating physician rule. First, she argues that the ALJ properly considered the records from Yemen as statements, not opinions, as they contained little by way of opinions on Plaintiff's ability to work. (PageID.427.) Second, the Commissioner argues that the records do not establish the type of ongoing treating relationship necessary to consider the opinions as coming from a treating source. (PageID.427–428.) Finally, the Commissioner argues that assuming the doctors offered an opinion, the fact that the physicians were not licensed in the United States was not the ALJ's sole reason for discounting their statements. (PageID.428–429.) Accordingly, the Commissioner contends that even if the ALJ erred in classifying the physicians' as nonacceptable sources, his analysis still complies with the regulations for considering medical opinions. (PageID.429.) Plaintiff provides little by way of response, other than reasserting that the physicians qualified as treating sources who offered medical opinions and that the ALJ solely relied on the fact that the physicians were not licensed in the United States to discount the opinions. (PageID.439.)

The Court agrees that the records from Yemen do not contain medical opinions. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).[5]  Records regarding Plaintiff's June 30, 2006,

---

[5] Here, the Court will assume the ALJ erred in finding the physicians were not acceptable sources as even if Plaintiff is correct, it does not change the result that the Commissioner's decision should be upheld. Though not identified by either party, the Court also notes that appears the agency's Program Operations Manual (POMS) directs that the examiner should "[a]ssume in the absence of any indication to the contrary that a foreign medical report was

visit include a recitation of his complaints, a statement that X-Rays showed degenerative changes, and a statement of the medications he was prescribed.  (PageID.283.)  There is nothing here reflecting judgements on what Plaintiff could still do despite these impairments.  As such, any error here is harmless as the statement is entirely consistent with the ALJ's decision.  Similarly, the next record contains diagnoses of "high fever, sweating, muolgia [sic], disarray helicobacter" and states that Plaintiff has not experienced any benefit from treatment.  (PageID.284.)  Again, there is nothing inconsistent between this report and the ALJ's decision.  The third record again contains only diagnoses and medication prescriptions.  (PageID.285.)  Indeed, the only note that could be considered an opinion is Dr. Al-Riashy's statement on August 21, 2013, that Plaintiff's pain increases with activities and walking.  (PageID.283.)  This statement comes well after Plaintiff's date last insured, and nothing indicates it related to the relevant period.  Moreover, it still is not inconsistent with the ALJ's ultimate determination.  Accordingly the ALJ's error, at most, is harmless. *Bradford v. Comm'r of Soc. Sec.*, No. 1:07-CV-50, 2008 WL 398281, at *3 (W.D. Mich. Feb. 11, 2008) (stating that the failure to follow the treating physician rule is "harmless where the Commissioner adopts the opinion of the treating source or makes only findings that are consistent with the opinion.") (internal quotations and citations omitted).

Moreover, it is not the case, as Plaintiff claims, that the ALJ discounted the physician's statements on the sole basis that the doctors were not licensed in the United States.  Even

---

completed by or based upon the report of a qualified medical practitioner." SSA POMS DI 43510.010. POMS, however, is an internal agency manual. Its guidelines have no legal force, and failure to follow the POMS is not legal error. *See Davis v. Sec'y of Health & Human Servs.*, 867 F.2d 336, 340 (6th Cir.1989) ("POMS is a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims and does not have the force and effect of law."); *see also Wells v. Astrue*, No. 09–32, 2009 WL 3400911, at * 4 (E.D. Ky. Oct. 20, 2009) ("The POMS contains a disclaimer indicating that it 'states only internal SSA guidance' and 'is not intended to, and does not, and may not be relied upon to create any rights enforceable by law by any party in a civil or criminal action.'" (quoting POMS, disclaimer, https://secure.ssa.gov/apps10/poms.nsf/aboutpoms). POMS guidelines, where applicable, provide persuasive authority. *Davis*, 867 F.2d at 340.

taking into consideration the fact that Plaintiff's records were lost, the ALJ noted that the records demonstrate significant gaps in treatment, and such treatment was routine and conservative in nature. (PageID.45).  These were appropriate considerations to make.  20 C.F.R. § 404.1527.

        For all the above reasons, this claim of error is denied.

## CONCLUSION

        For the reasons set forth herein, the Commissioner's decision is supported by substantial evidence and therefore will be **AFFIRMED.**

        A separate judgment shall issue.


Dated:  January 18, 2017                    /s/ Paul L. Maloney
                                         PAUL L. MALONEY
                                         United States District Judge